Elaine BLUITT, Plaintiff,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT and Steven Amstutz, Individually and in his official capacity, Defendants.

No. CIV.A.H–01–1195.

United States District Court,
S.D. Texas.

Oct. 14, 2002.

Joseph R Willie, II, Houston, TX, for Elaine Bluitt.

Clay T. Grover, Feldman & Rogers, Houston, TX, for Houston Independent School Dist., Steven Amstutz.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendants Houston Independent School District ("HISD") and Steven Amstutz's ("Amstutz") (collectively "Defendants") Motion for Summary Judgment (# 21). Defendants seek summary judgment on Plaintiff Elaine Bluitt's ("Bluitt") claims alleging discriminatory employment practices under the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e–2000h–6, the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621–634, and Section 106.001(a) of the Texas Civil Practice and Remedies Code, TEX. CIV. PRAC. & REM. CODE ANN. § 106.001(a), as well as due process and equal protection violations under the Fourteenth Amendment to the United States Constitution. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendants' motion for summary judgment should be granted in part and the remaining state law claim should be dismissed.

## I. *Background*

Bluitt is a fifty-five-year-old, African–American female who was employed by HISD as a teacher from August 1969 until her termination on September 7, 2000. In fall 1997, she was assigned to teach mathematics at Robert E. Lee High School ("LHS"). While in that position, Bluitt allegedly had several emotional outbursts as well as arguments with colleagues, supervisors, and students. She was ultimately terminated by the HISD Board of Education ("the Board"), which approved a recommendation for her termination submitted by Amstutz, principal of LHS and Bluitt's supervisor at the time.

Defendants allege several instances of unethical and unprofessional conduct on the part of Bluitt beginning in the 1998–1999 school year. According to the testimony of-Amstutz, LHS Assistant Principal Mary Stevens ("Stevens"), and Bluitt's colleagues at administrative hearings, Bluitt, at times, became angry and hostile toward students, teachers, and administrators and, on several occasions, confronted her colleagues and supervisors in a belligerent manner in front of students. Many of these encounters are recounted in a series of disciplinary memoranda sent to Bluitt. For example, on September 3, 1998, Bluitt allegedly told a student to "shut up." Stevens asserts that at one point during her September 8, 1998, conference with Bluitt regarding that incident, "[Bluitt] stood up, leaned over the desk, and I was physically afraid. I was scared." She elaborates that Bluitt raised her voice and was belligerent toward her at the meeting.

Bluitt was also purportedly prone to loud and angry "outbursts" during Math Department meetings, often regarding subjects irrelevant to the particular meeting. Defendants' evidence reflects that at a Math Department meeting on August 12, 1999, Bluitt was infuriated about her teaching assignment and proceeded to make references to recent incidents of violence at schools, including the well-known shooting at Columbine High School in Colorado. As related by other witnesses, Bluitt remarked, "Now I understand why people do it" and "I wonder if that's what it's going to take—a teacher shooting up a school."

In fall 1999, Bluitt reportedly confronted colleague and Math Department Chair Sheri Nanny ("Nanny") in a loud manner, while standing in the doorway to Nanny's classroom in front of her students, shaking her finger in Nanny's face and suggesting that Nanny was incompetent. In December 1999, Bluitt allegedly complained loudly and publicly to the LHS Special Education Coordinator, Marilyn Maxwell, that she should not have to work with "those kinds of students." LHS Assistant Principal Marie Moreno ("Moreno") related another incident in December during which Bluitt shook her finger and yelled at her in front of Bluitt's class and then closed the door in her face. After each of these incidents, Amstutz, Stevens, or Moreno warned Bluitt that her behavior was unacceptable. On December 14, 1999, Amstutz, along with Moreno, met with Bluitt and issued a written warning for her to discontinue such "unprofessional" conduct.

On February 29, 2000, Amstutz and Stevens met with Bluitt to review her job performance. During the conference, Amstutz recounted various instances of what he characterized as rude, inflammatory, and hostile behavior displayed by Bluitt over the past several years in different job assignments. Bluitt replied that she was an excellent teacher with an outstanding record and that her interactions with faculty and staff had been professional, describing herself as an exemplary employee between the hours of 7:45 A.M. and 3:30 P.M. In a memorandum dated March 1, 2000, Amstutz recapped the prior day's

meeting and notified Bluitt that he was recommending her termination. Bluitt's employment was governed by a continuing contract which stated that she could be terminated "for good cause as determined by the Employer, good cause being the failure of the Teacher to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts throughout the State of Texas."

On March 2, 2000, Amstutz met with Bluitt and informed her that he was going to recommend her termination based on her unprofessional behavior. Bluitt allegedly responded by yelling at Amstutz while throwing paper across the desk and against the wall. On March 24, 2000, Bluitt received a detailed notice of various allegations supporting the recommendation for her termination from former HISD Superintendent Ron Paige ("Paige"). In accordance with Texas law and HISD administrative policies, Bluitt requested and received a three-day due process hearing before an independent hearing examiner. At the hearing, which took place on May 25, 30, and 31, 2000, Bluitt was represented by counsel, who presented evidence and cross-examined witnesses on her behalf. In an August 30, 2000, Findings of Fact and Conclusions of Law, the hearing examiner found that Amstutz's recommendation for Bluitt's termination was based on "legitimate, nondiscriminatory reasons" and that Bluitt's conduct constituted sufficiently good cause for discharge.

On September 7, 2000, the HISD Board of Education considered the hearing examiner's recommendation, and, in accordance with HISD Board policies, Bluitt was allowed to make a statement requesting the Board not to accept the hearing examiner's recommendation. The Board voted unanimously to terminate Bluitt. At deposition, Bluitt claimed that the decision of the independent examiner was at least partially based on evidence from witnesses who did not testify at the hearing and, therefore, were unavailable for cross-examination. Bluitt also asserted her belief that the Board members did not adequately review the credibility of the hearing examiner's recommendation.

Because she was discharged for alleged misconduct, Bluitt was initially found to be disqualified from receiving unemployment compensation under Section 207.044 of the Texas Labor Code. On appeal, the Texas Workforce Commission Appeal Tribunal reversed this decision, finding that Bluitt's conduct did not constitute misconduct under the Texas Labor Code.

On September 8, 2000, Bluitt filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging employment discrimination on the basis of her race and age. She received a right to sue letter on January 8, 2001. On April 11, 2001, Bluitt filed her original complaint, which, as amended, alleges: (1) race discrimination under Title VII; (2) age discrimination under the ADEA; (3) race discrimination under 42 U.S.C. § 1981; (4) substantive and procedural due process violations under 42 U.S.C. § 1983; (5) equal protection violations under 42 U.S.C. § 1983; (6) due process and equal protection violations under the United States Constitution; and (7) race and age discrimination under Chapter 106 of the Texas Civil Practice and Remedies Code.

Specifically, Bluitt contends that Amstutz based his recommendation for her termination on her race and age. She asserts that Amstutz treated her inequitably compared to other teachers who were younger or not African American. According to Bluitt's and Moreno's testimony at the May 25, 2000, termination hearing, Amstutz told Bluitt at the December 14 meeting that she should consider retiring. Bluitt maintains that Amstutz made such a

recommendation on other occasions, as well. Additionally, while Board of Education Member Laurie Bricker ("Bricker") testified in a later hearing to the existence of a practice of gathering "documentation" and keeping records on the behavior of HISD teachers when reprimand or termination was being considered, Bluitt alleges that Amstutz maintained a "secret paper trail" on her, placing memoranda in her personnel file without her knowledge. Bluitt claims to be the only employee whom Amstutz reprimanded and monitored in this manner, contending that Amstutz did so because of her race and age. Bluitt also claims that her due process and equal protection rights were violated when HISD acquiesced to Amstutz's recommendation for her termination and failed to provide her with the three-tiered system of hearings described in an HISD policy regarding internal grievances. Throughout this time period, HISD had in place a written policy against acts of discrimination, as set forth in § 500.000 of the HISD Board Policies, under which discrimination based on age, color, handicap or disability, ancestry, national origin, marital status, race, religion, sex, veteran status, or political affiliation was expressly prohibited.

On June 10, 2002, Defendants filed their motion for summary judgment, asserting that Bluitt's Title VII and ADEA claims are barred by the statute of limitations because she filed this action more than ninety days after receiving her right-to-sue letter, that HISD did not engage in conduct proscribed by 42 U.S.C. §§ 1981 and 1983, that Amstutz is immune from suit under §§ 1981 and 1983, and that Defendants did not violate any of Bluitt's constitutional rights.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1074 (5th Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)); *see Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). A material fact is one that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving parties, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. ·Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing,* 185 F.3d at 505; *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321–22; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir. 1993)); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321; *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997), *cert. denied,* 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *see Christopher Village Ltd. P'ship v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999); *Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998); *Marshall,* 134 F.3d at 321. The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999); *accord Little,* 37 F.3d at 1075 ("*[w]e do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" (emphasis in original) (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990))).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Hart,* 127 F.3d at 435; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson,*

477 U.S. at 247–48, 106 S.Ct. 2505). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Title VII and the Age Discrimination in Employment Act*

Defendants contend that Bluitt's claims for violations of Title VII and the ADEA are time-barred. Although Bluitt concedes that she did not timely file her complaint, in her response, she argues that the statute of limitations should be equitably tolled because she did not have adequate notice of the ninety-day filing requirement and was not represented by counsel at the time.

"A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC." *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir.1992); *see Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir.1998); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir.1988); *Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1250 (5th Cir.1985); *see also* 42 U.S.C. § 2000e–5(f). Title VII states:

> [I]f the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."

*Espinoza*, 754 F.2d at 1248 (quoting 42 U.S.C. § 2000e–5(f)(1)). The ADEA contains a similar limitation on time to file suit, providing:

> If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days of the receipt of such notice.

29 U.S.C. § 626(e). Thus, as with a Title VII claim, an ADEA claim must be filed within ninety days after receipt of a notice of right to sue. *See St. Louis v. Texas Worker's Comp. Comm'n*, 65 F.3d 43, 47–48 (5th Cir.1995), *cert. denied*, 518 U.S. 1024, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996).

The filing requirements of Title VII and the ADEA, however, are not jurisdictional prerequisites to bringing suit in federal court but are more akin to statutes of limitation and, hence, are subject to the doctrines of waiver, estoppel, and equitable tolling. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151–52, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 390–91 (5th Cir.2002); *St. Louis*, 65 F.3d at 47; *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir.1983). Although the ninety-day filing requirement is not jurisdictional, in the absence of extenuating circumstances,

it is a statutory precondition to the maintenance of any action under Title VII or the ADEA in federal court. *See Dao*, 96 F.3d at 788; *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069–70 (5th Cir.1981); *Plant v. GMRI, Inc.*, 10 F.Supp.2d 753, 755 (S.D.Tex.1998); *Smith v. Flagship Int'l*, 609 F.Supp. 58, 61 (N.D.Tex.1985). Like all Title VII and ADEA filing requirements, the ninety-day filing requirement is treated as a statute of limitations for all purposes. *See Espinoza*, 754 F.2d at 1248 n. 1; *Nilsen*, 701 F.2d at 562. Thus, dismissal of a Title VII or ADEA claim is proper where the plaintiff fails to prove that the complaint was filed with the court on a timely basis. *See St. Louis*, 65 F.3d at 47–48; *Smith*, 609 F.Supp. at 61. In federal court, dismissals grounded on the statute of limitations are final adjudications on the merits. *See Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 880 F.2d 818, 819–20 (5th Cir.1989); *Nilsen*, 701 F.2d at 562.

■ The United States Supreme Court has addressed the issue of equitable tolling of statutes of limitation in the context of an action brought under the Federal Employer's Liability Act. The Court stated:

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights.

*Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (quoting *Order of R.R. Tels. v. Railway Exp Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). The plaintiff bears the burden of demonstrating a factual basis to justify tolling of the limitations period. *See Hood v. Sears, Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir.1999); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir.1992); *Blumberg v. HCA Mgmt. Co., Inc.*, 848 F.2d 642, 644 (5th Cir.1988); *Snooks v. University of Houston, Clear Lake*, 996 F.Supp. 686, 689 (S.D.Tex.1998).

The Fifth Circuit, in a Title VII case, held that the period in which a plaintiff must file suit after being notified of his right to sue commences on the date the plaintiff or his attorney actually receives the letter, *i.e.*, the date that the letter "actually came into his hands." *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir.1974), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). It is generally recognized that the ninety-day period begins to run "on the date the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." *Ringgold v. National Maint. Corp.*, 796 F.2d 769, 770 (5th Cir.1986). In *Franks*, the court noted that "[t]he courts have consistently construed [Title VII] liberally to effectuate its remedial purpose," and opined that "Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." 495 F.2d at 404; *see Cooper v. Lewis*, 644 F.2d 1077, 1082, 1084–85 (5th Cir.1981).

"In *Baldwin County Welcome Center v. Brown*, the Supreme Court outlined several criteria to consider when evaluating a request for equitable tolling: first, whether the EEOC provided adequate notice of the complainant's right to sue; second, whether a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; third, whether the court itself has led the plaintiff to believe that she has done everything required of her; and fourth, whether affirmative misconduct on the part of the defendant lulled the plaintiff into inaction." *St. Louis*, 65 F.3d at 47 (citing 466 U.S. at 151, 104 S.Ct. 1723). Courts, therefore, have held that the ninety-day period is subject to equitable tolling when the plaintiff was delayed in filing due to circumstances beyond his control, such as incorrect or ambiguous advice of a court clerk or unclear language in the notice. *See Martinez v. Orr*, 738 F.2d 1107, 1111–12 (10th Cir.1984); *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 858–59 (10th Cir.1983); *Wagher v. Guy's Foods, Inc.*, 765 F.Supp. 667, 670 (D.Kan.1991). Similarly, the ninety-day period has been equitably tolled when the plaintiff notified the EEOC of his change of address, but the EEOC mailed the right-to-sue letter to an old address. *See Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384–85 (9th Cir.), *cert. denied*, 522 U.S. 858, 118 S.Ct. 158, 139 L.Ed.2d 103 (1997); *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475 (6th Cir.1986); *Espinoza*, 754 F.2d at 1249; *Beale v. Burlington Coat Factory*, 36 F.Supp.2d 702, 704–05 (E.D.Va.1999); *Smith v. Chase Manhattan Bank*, No. 97 CIV. 4507(LMM), 1998 WL 642930, at *4 (S.D.N.Y. Sept.18, 1998). "[O]rdinarily the purposes of the Act will be served by commencement of the ninety-day period on the date that notice is received at the address supplied to the EEOC by the claimant." *Espinoza*, 754 F.2d at 1249.

The Fifth Circuit has not recognized a plaintiff's excusable ignorance of the defendant's discriminatory act as a basis for equitable tolling. *See Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 810 n. 14 (5th Cir.1991) (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 477–78 (5th Cir.1991)). The court, however, has held equitable tolling to apply in a variety of situations, including: (1) the pendency of an action between the same parties in the wrong forum; (2) the plaintiff's unawareness of facts giving rise to a claim because of the defendant's intentional concealment; and (3) the EEOC's misleading of the plaintiff about the nature of his rights. *See Hood*, 168 F.3d at 232; *Amburgey*, 936 F.2d at 810 n. 14; *Blumberg*, 848 F.2d at 644; *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302–03 (5th Cir.1979). The Fifth Circuit has further indicated that other situations might similarly merit the application of equitable tolling. *See Hood*, 168 F.3d at 232; *Blumberg*, 848 F.2d at 644. None of these circumstances, however, exist here.

In the case at bar, Bluitt received her notice of right to sue from the EEOC on January 8, 2001. A letter from the EEOC to Bluitt dated January 3, 2001, reads:

> Your letter of Determination was mailed to you on 10/30/00 by Certified Mail. However, you failed to pick this letter up from the Post Office and it has been returned to this office.

> Please come by our office at 1919 Smith, Sixth Floor, and ask for [Tarasha Scott, Unit Clerk].

A document entitled DISMISSAL/NOTICE OF RIGHT TO SUE RECEIPT dated January 8, 2001, signed by Bluitt, and witnessed by an EEOC representative reads:

> I, Elaine Bluitt, hereby acknowledge receipt of my letter of the Dismissal/No-

tice of Right To Sue, dated 10/30/00, issued on my charge referenced.

· At deposition, Bluitt admitted that she received the letter on January 8, 2001. In her response to the summary judgment motion, however, she asserts that the limitations period should be equitably tolled "due to the fact that the Dismissal/Notice of Right to Sue Receipt does not adequately and/or statutorily inform the Plaintiff that she must commence her lawsuit within 90 days of receiving the receipt." Nonetheless, it is undisputed that she received the right-to-sue notice on January 8, 2001, which states in two locations next to checked boxes referencing her Title VII and ADEA claims, "If you decide to sue, you must sue *WITHIN 90 DAYS* from your receipt of this Notice; otherwise your right to sue is lost." (Emphasis in original.) Thus, the record reflects that Bluitt had adequate notice of the ninety-day limitations period. *See St. Louis,* 65 F.3d at 47–48. Yet, she did not file suit until April 11, 2001, ninety-three days after her belated receipt of her right-to-sue letter.

■ It is well established that mere ignorance of the law for any reason, including lack of counsel, does not toll a statute of limitations. *See Barrow,* 932 F.2d at 478 (citing *Larson v. American Wheel & Brake, Inc.,* 610 F.2d 506, 510 (8th Cir. 1979)). The Fifth Circuit has specifically rejected a claimant's lack of representation as a basis for invoking equitable tolling. *See id.* (barring a claim under the ADEA) (citing *James v. United States Postal Serv.,* 835 F.2d 1265, 1267 (8th Cir.1988)); *White v. Bethlehem Steel Corp.,* 900 F.Supp. 51, 53 (E.D.Tex.1995) (precluding a race discrimination claim under Title VII). Hence, in light of Fifth Circuit precedent and the clear notice provided to Bluitt in the right-to-sue letter, Bluitt's purported grounds for tolling the ninety-day limitation period are inadequate. Therefore Bluitt's claims under Title VII

and the ADEA must be dismissed as untimely.

### C. *Civil Rights Acts*

Bluitt contends that HISD and Amstutz, both individually and in his official capacity, have violated her constitutional rights and are therefore liable under 42 U.S.C. §§ 1981 and 1983. Defendants argue that because HISD maintains no policy or custom of discrimination, it cannot be held liable under these statutes. Furthermore, Defendants deny Amstutz's liability in his official capacity on the ground that HISD is not liable and an official cannot be held independently liable for his official actions. Finally, they assert that Amstutz is entitled to qualified immunity.

#### 1. *Elements of Section 1981 and 1983 Claims*

##### a. *Section 1981*

■ The Civil Rights Act of 1866, 42 U.S.C. § 1981, provides, in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Section 1981 prohibits racial discrimination, both public and private, in the making or enforcement of contracts. *See Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.,* 410 U.S. 431, 439–40, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Jones v. Alfred H.*

*Mayer Co.*, 392 U.S. 409, 441–43, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). " 'The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality.' " *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 384, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (quoting *Georgia v. Rachel*, 384 U.S. 780, 791, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966)).

 In order to establish a claim under § 1981, it must be shown that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993); *see Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir.1994) (citing *Mian*, 7 F.3d at 1087). Liability cannot be imposed under § 1981 absent proof of purposeful discrimination. *See General Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 390, 102 S.Ct. 3141; *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 536 (9th Cir.1982).

b. *Section 1983*

 The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *See Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); *Migra v. Warren City School Dist. Board of Educ.*, 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir.1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985).

 To prevail on a § 1983 claim, Bluitt must prove that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984). A § 1983 complainant must support her claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory

allegations. *See Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir.), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990); *Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield,* 793 F.2d 737, 739 (5th Cir.1986); *Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985).

▇▇▇▇ Thus, for Bluitt to recover, she must show that Defendants deprived her of a right guaranteed by the Constitution or the laws of the United States. *See Daniels,* 474 U.S. at 329–31, 106 S.Ct. 662; *Baker,* 443 U.S. at 139, 99 S.Ct. 2689; *Thomas v. Sams,* 734 F.2d 185, 190–91 (5th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Bluitt must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *See Farmer v. Brennan,* 511 U.S. 825, 828–29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels,* 474 U.S. at 328, 106 S.Ct. 677; *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The negligent deprivation of life, liberty, or property is not a constitutional violation. *See Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995); *Fraire v. City of Arlington,* 957 F.2d 1268, 1276 (5th Cir.), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); *Herrera v. Millsap,* 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen,* 846 F.2d 337, 339 (5th Cir.1988); *Young,* 775 F.2d at 1353. Moreover, to hold a defendant liable under § 1983, Bluitt must adduce facts demonstrating the defendant's participation in the alleged wrong. *See Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992); *Jacquez,* 801 F.2d at 793.

#### 2. *HISD's Liability*

▇▇▇▇ In order for a governmental entity or official to be held liable under either § 1981 or § 1983, the discrimination in question must result from an official policy or custom. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Evans v. City of Houston,* 246 F.3d 344, 357–58 (5th Cir.2001); *Flores v. Cameron County,* 92 F.3d 258, 263 (5th Cir.1996); *Campbell,* 43 F.3d at 977. Indeed, the Supreme Court held in *Jett* "that § 1981 [does] not provide a separate cause of action against local government entities. The Court concluded that plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Oden v. Oktibbeha County, Miss.,* 246 F.3d 458, 462–63 (5th Cir.), *cert. denied,* 534 U.S. 949, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001) (citing *Jett,* 491 U.S. at 731, 109 S.Ct. 2702). Hence, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett,* 491 U.S. at 733, 109 S.Ct. 2702; *accord Oden,* 246 F.3d at 462–64. The Fifth Circuit has recognized that *Jett* remains controlling law on this issue despite the changes to § 1981 effected by the Civil Rights Act of 1991. *See id.* at 463–64; *see also McCall v. Dallas Indep. Sch. Dist.,* 169 F.Supp.2d 627, 639–40 (N.D.Tex. 2001). Thus, Bluitt has no viable, independent cause of action against Defendants under 42 U.S.C. § 1981.

▇▇▇▇ For § 1983 liability to attach, a plaintiff must demonstrate three elements "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.), *cert. denied,* 534 U.S. 820, 122 S.Ct. 53, 151 L.Ed.2d 23 (2001).

"[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir.1998), *cert. granted*, 525 U.S. 1098, 119 S.Ct. 863, 142 L.Ed.2d 716, *cert. dismissed*, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999)). Moreover, when proceeding under § 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Id.* at 579.

█ The United States Supreme Court has expressly held that local government entities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). A municipality may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018; *see also Languirand*, 717 F.2d at 223. The Fifth Circuit has defined official policy or custom as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy, Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)); *accord Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007, 121 S.Ct. 1734, 149 L.Ed.2d 658 (2001); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir.1995), *cert. denied*, 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996).

The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The second type of "policy" arises from custom, *i.e.*, "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir.1984). A third type of "policy" stems from "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'" *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the county may be liable." *Brown*, 219 F.3d at 462. Under this type of "policy," a municipality can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers.

*See id.* Such "authorized decisionmakers" are defined to be officials " 'whose acts or edicts may fairly be said to represent official policy' " and whose decisions may therefore result in municipal liability under § 1983. *Id.* at 480 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018).

▮ Proof of a responsible policymaker is a necessary element for the imposition of municipal liability under § 1983. *See Piotrowski,* 237 F.3d at 579 (citing *Jett,* 491 U.S. at 737, 109 S.Ct. 2702; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur,* 475 U.S. at 482–83, 106 S.Ct. 1292). State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity. *See Bennett v. Pippin,* 74 F.3d 578, 586 (5th Cir.), *cert. denied,* 519 U.S. 817, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996) (citing *Jett,* 491 U.S. at 737, 109 S.Ct. 2702; *Praprotnik,* 485 U.S. at 124, 108 S.Ct. 915; *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1407 (5th Cir.1995)). Furthermore, the Fifth Circuit has held that, under *Monell,* when a final policymaker makes a decision, and that decision is within the sphere of the policymaker's final authority, " 'the existence of a well-established, officially-adopted policy will not insulate the municipality from liability.' " *Id.* (quoting *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 754 (5th Cir.1993)).

▮ " 'Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.' " *Piotrowski,* 237 F.3d at 579 (quoting *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir.1984)). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster,* 735 F.2d at 842; *accord Bennett,* 728 F.2d at 768. Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy. *See Fraire,* 957 F.2d at 1278 (citing *Rodriguez v. Avita,* 871 F.2d 552, 554 (5th Cir.), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989)); *accord Thompson v. City of Los Angeles,* 885 F.2d 1439, 1443–44 (9th Cir.1989); *Palmer v. City of San Antonio,* 810 F.2d 514, 516 (5th Cir.1987). " 'Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell,* 43 F.3d at 977 (quoting *Bennett,* 728 F.2d at 768 n. 3); *accord Piotrowski,* 237 F.3d at 581.

▮ Thus, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Id.* In the context of police misconduct, to demonstrate a municipal policy or custom under § 1983, a plaintiff must at least show:

> a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force.

*Fraire,* 957 F.2d at 1278 (citing *Languirand,* 717 F.2d at 227–28). Only if the plaintiff demonstrates that her injury resulted from a " 'permanent and well settled' " practice may liability attach for injury resulting from a local government custom. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Moreover, a governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see Piotrowski,* 237 F.3d at 580; *Burns v. City of Galveston,* 905 F.2d 100, 102 (5th Cir. 1990). "*Monell* describes the high threshold of proof by stating that the policy must be the 'moving force' behind the violation." *Piotrowski,* 237 F.3d at 580 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018); *see also City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197. Hence, "the plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.'" *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994)).

Nevertheless, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire,* 957 F.2d at 1281 (citing *City of Canton,* 489 U.S. at 386, 109 S.Ct. 1197; *Tuttle,* 471 U.S. at 823, 105 S.Ct. 2427). The plaintiff must also establish that a government policy or custom was the proximate cause of the injuries sustained. *See Huffman v. County of Los Angeles,* 147 F.3d 1054, 1059 (9th Cir.1998); *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996), *cert. denied,* 520 U.S. 1117, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997); *Kneipp v. Tedder,* 95 F.3d 1199, 1213 (3d Cir.1996); *Horn by Parks v. Madison County Fiscal Ct.,* 22 F.3d 653, 659 (6th Cir.), *cert. denied,* 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990); *Doe v. District of Columbia,* 701 F.2d 948, 953 (D.C.Cir.1983); *Rheuark v. Shaw,* 628 F.2d 297, 305 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). "Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell.* Rather, the policy must be the proximate cause of the section 1983 injury." *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 837 (9th Cir.1996), *cert. denied,* 519 U.S. 1111, 117 S.Ct. 950, 136 L.Ed.2d 837 (1997) (citing *Mann v. City of Tucson,* 782 F.2d 790, 793 (9th Cir.1986)).

In addition, the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bryan County,* 520 U.S. at 410, 117 S.Ct. 1382. The Supreme Court has explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.* at 404, 117 S.Ct. 1382; *see Spiller,* 130 F.3d at 167 (quoting *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir.1996)). "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Bryan County,* 520 U.S. at 415, 117 S.Ct. 1382. Thus, plaintiffs seeking to recover against a governmental entity under § 1983 "must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the [entity] consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens." *Snyder,* 142 F.3d at 795–96 (citing *City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197);

see *Hare v. City of Corinth*, 74 F.3d 633, 649 n. 4 (5th Cir.1996). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410, 117 S.Ct. 1382.

Furthermore, a governmental entity may not be held liable for the acts of its employees under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Piotrowski*, 237 F.3d at 578; *Flores*, 92 F.3d at 263; *Colle v. Brazos County*, 981 F.2d 237, 244 (5th Cir.1993); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir.1990); *Rodriguez*, 871 F.2d at 554. "Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). In order to hold a governmental entity liable for the acts of a nonpolicy-making employee, the plaintiff must allege and prove that: "(1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc.*, 81 F.3d at 532–33 (citing *Palmer*, 810 F.2d at 516). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan County*, 520 U.S. at 405, 117 S.Ct. 1382 (citing *City of Canton*, 489 U.S. at 391–92, 109 S.Ct. 1197). "These requirements must not be diluted for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.'" *Snyder*,

142 F.3d at 796 (quoting *Bryan County*, 520 U.S. at 405, 117 S.Ct. 1382).

In the present case, Bluitt has failed to adduce sufficient evidence demonstrating a policy or custom of HISD authorizing or condoning discriminatory employment practices. Indeed, it is undisputed that the official policy of HISD, as set forth in HISD's Board Policies, dated November 18, 1993, expressly prohibits discrimination based on age, color, handicap or disability, ancestry, national origin, marital status, race, religion, sex, veteran status, or political affiliation. Bluitt has presented no controverting evidence suggesting that HISD has an official policy authorizing such discrimination.

Similarly, Bluitt has offered no evidence that it is the well-established custom of HISD, its principals, or other employees to engage in such practices. Although it has been established that HISD principals, including Amstutz, commonly gathered documentation and data regarding the misconduct of subordinates when disciplinary measures or termination was being considered, Bluitt makes no showing that this practice had a discriminatory effect or that the implementation of the policy was a "moving force" behind any discriminatory act that HISD or Amstutz committed against her. *See Piotrowski*, 237 F.3d at 580.

As Bluitt points out, in the transcript of the Procedure to Consider the Recommendation of the Certified Hearing Examiner in the Matter of Elaine Bluitt, dated September 7, 2000, Bricker acknowledged that the Board requires documentation relating to a teacher's actions before making any decisions. Specifically, Bricker stated:

And one of the things that we value is when a principal, like the principal at Sharpstown and the principal at Lee, have documented; which we always ask, as our board always has, ask for docu-

mentation so that we're not making just a rash decision.

Bluitt additionally notes that, at the termination hearing on May 25, 2000, Stevens referred to "gather[ing] data" on teachers who were being considered for reprimand or termination. It is evident, however, from Bricker's and Stevens's testimony that the "documentation" or "data" at issue constitutes items such as letters and statements from the principals of Sharpstown and LHS as well as from Bluitt's colleagues regarding Bluitt's behavior. Far from evincing discriminatory intent, the alleged practice of HISD to gather documentation on an employee, such as Bluitt, who is being considered for termination, serves to protect the employee from a "rash decision" based on rumor and innuendo, unsupported by concrete evidence gained from a thorough investigation of the conduct in question.

Bluitt alleges, however, that the practice of gathering data was applied in a discriminatory manner. Specifically, Bluitt points to her own deposition testimony and that of Nanny, a Caucasian female over forty years of age, indicating that she was not the only person who discussed the Columbine shooting on August 12, 1999, but was the only person written up about the incident. In the testimony to which she alludes, Bluitt and Nanny mention only non-inflammatory comments made by others during the conversation at issue. At deposition, Bluitt stated:

Well, in fact, during the conversation Ms. Palmisano mentioned Colorado, a massacre at a school in Colorado. In the same conversation Ms. Pye mentioned a man shooting up a Jewish community center. These things were mentioned in conversation by Ms. Palmisano and Ms. Pye during a conversation on workplace violence.

Nanny recalled the conversation involving Bluitt somewhat differently:

From what I remember, it was said, "Wasn't it a terrible thing what happened at"—and it was the name for the California. And I think I said, "I believe that happened in Columbine; and, yes, it was terrible." A couple of other teachers said how terrible the thing was. And then Ms. Bluitt talked about how someone ought to shoot up our school. And that is totally different from what was said previously. No one else said that the school should be shot up.

At deposition, Bluitt denied making the comments attributed to her. Nevertheless, according to a memorandum to Bluitt from Amstutz dated August 25, 1999, recounting his meeting with Bluitt and Stevens on August 12, 1999, Bluitt conceded at the conference that she had made such comments and acknowledged that they demonstrated a lack of good judgment and were unprofessional. Amstutz and Stevens both confirmed at the May 2000 hearing that Bluitt had admitted making the comments at issue regarding a teacher shooting up a school at the conference. In any event, Bluitt points to no evidence that similarly situated persons outside her protected class or anyone, for that matter, made remarks similar to those she reportedly made. Thus, Bluitt has not shown that she was treated less favorably than her colleagues for engaging in the same type of behavior.

In her response, Bluitt also refers to Amstutz's deposition testimony that when he wrote, "I discussed your repeated statements to teachers and administrators that were rude, inflammatory and hostile" in a memorandum summarizing a conference he had with her on February 29, 2000, the words were his and not the exact words used by the complaining teachers and administrators. His testimony, however, does not constitute evidence that the language used in the memorandum was, as

Bluitt contends, "exaggerate[d]" or "a clear example of [his] malignant animosity toward Plaintiff." Moreover, even if Amstutz used exaggerated language in his documentation of her conduct, she has not shown that he treated other employees any differently.

Bluitt further alleges that "Amstutz, pursuant to Defendant HISD's practice, reprimanded Plaintiff for complaining about Ms. Shari [sic] Nanny, a non-African American; however, whenever Ms. Nanny complained about Plaintiff, an African American, Amstutz took Ms. Nanny's allegations as true and correct." As evidence of this, Bluitt points to a passage in her deposition wherein she stated that she believes Nanny had opined that Bluitt should not get a department chair position and that she had tried to complain about Nanny. Nowhere in that passage, however, does Bluitt suggest that she was reprimanded for complaining about Nanny or that Nanny made "allegations" that Armstutz took to be "true and correct."

In any event, Bluitt has not shown that her termination was anything more than an isolated incident of an adverse employment action taken against an African American; she has failed to demonstrate "a pattern of similar incidents." *Fraire*, 957 F.2d at 1278; *see Thompson*, 885 F.2d at 1443–44; *Palmer*, 810 F.2d at 516. Hence, there is no evidence that Bluitt's termination resulted from a "permanent and well-settled" discriminatory practice. *See Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915; *Adickes*, 398 U.S. at 168, 90 S.Ct. 1598.

Finally, Bluitt has failed to identify an authorized decisionmaker whose single decision could be understood as HISD policy. *See Piotrowski*, 237 F.3d at 578–79 (citing *Jett*, 491 U.S. at 737, 109 S.Ct. 2702; *Praprotnik*, 485 U.S. at 126, 108 S.Ct. 915; *Pembaur*, 475 U.S. at 482–83, 106 S.Ct. 1292); *Brown*, 219 F.3d at 462. Bluitt does not claim that the HISD Board itself harbored any discriminatory intent in its decision to terminate her employment; her only allegation of discriminatory intent is that of Amstutz's reason for his recommendation. As Defendants note in their motion, however, Texas law places final policymaking authority for an independent school district in its board of trustees only and, thus, HISD cannot be found liable for a single action of a nonpolicymaking employee, such as Amstutz. *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir.1998); *Meadowbriar Home for Children, Inc.*, 81 F.3d at 532–33; *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993); *see also Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 604 (5th Cir.2001) (school district not liable when school board, without knowledge of alleged retaliatory motive, acted on recommendation of superintendent and principal to terminate employee).

Therefore, because Bluitt has introduced no evidence of a constitutionally infirm governmental policy or custom that proximately caused her termination, HISD is entitled to summary judgment on Bluitt's claims under §§ 1981 and 1983.

### 3. Amstutz's Liability in his Official Capacity

Bluitt has sued Amstutz both individually and in his official capacity as principal of LHS and an official of HISD. To the extent he is sued in his official capacity, Amstutz's liability is coextensive with that of HISD. Official capacity lawsuits are typically an alternative means of pleading an action against the governmental entity involved. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). A suit against an official in his or her official capacity is not a suit against the official personally, but rather is a suit against the official's office. *See Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). As such, it is no different from a suit against the government itself. *See Will*, 491 U.S. at 71, 109 S.Ct. 2304 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell*, 436 U.S. at 691 n. 55, 98 S.Ct. 2018); *Baker*, 75 F.3d at 195.

▇ The United States Supreme Court has observed:

> As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Graham*, 473 U.S. at 166, 105 S.Ct. 3099 (emphasis in original) (citations omitted). Hence, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief." *Id.* at 167 n. 14, 105 S.Ct. 3099; *see Monell*, 436 U.S. at 690, 98 S.Ct. 2018. Because "the Eleventh Amendment does not apply to 'counties and similar municipal corporations,' " HISD may be subject to claims for monetary and injunctive relief under § 1983 if not otherwise precluded. *Crane v. Texas*, 759 F.2d 412, 415 (5th Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 n. 34, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))); *see Van Ooteghem v. Gray*, 584 F.Supp. 897, 898 (S.D.Tex.1984), *aff'd as modified*, 774 F.2d 1332 (5th Cir.1985) (citing *Bennett*, 728 F.2d at 765 n. 1). Bluitt's action against Amstutz in his official capacity, however, is merely redundant and is of no independent legal significance. Thus, summary judgment is warranted on Bluitt's claims against Amstutz in his official capacity under §§ 1981 and 1983.

### 4. *Amstutz's Individual Liability*

▇ Amstutz asserts that he has qualified immunity from Bluitt's claims brought against him in his individual capacity under §§ 1981 and 1983. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)); *see Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir.2001); *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.1999); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir.1997), *cert. denied*, 525 U.S. 1054, 119 S.Ct. 618, 142 L.Ed.2d 557 (1998); *Hart*, 127 F.3d at 441; *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091 (5th Cir.1997), *cert. denied*, 522 U.S. 1125, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998). "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Id.* at 1091–92 (cit-

ing *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir.1992)). The qualified or "good faith" immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties. Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law." *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir.1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Qualified immunity is available to defendant officials in suits arising under § 1983 and is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. *See Heitschmidt v. City of Houston*, 161 F.3d 834, 840 (5th Cir.1998); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994); *Jacquez*, 801 F.2d at 791; *see also Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806). The qualified immunity defense is also available in claims brought under § 1981. *See Todd v. Hawk*, 72 F.3d 443, 445 n. 7 (5th Cir.1995) (citing *Saunders v. Bush*, 15 F.3d 64 (5th Cir.1994)). Because it is "an affirmative defense, the defendant must both plead and establish his entitlement to immunity." *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Cronen*, 977 F.2d at 939); *see Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Harlow*, 457 U.S. at 815, 102 S.Ct. 2727.

"Whether a government official is entitled to qualified immunity 'generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Johnston*, 14 F.3d at 1059 (quoting *Texas Faculty Ass'n v. University of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir.1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))); *see Siegert*, 500 U.S. at 231, 111 S.Ct. 1789; *Mitchell*, 472 U.S. at 530, 105 S.Ct. 2806; *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *Petta v. Rivera*, 143 F.3d 895, 899–900 (5th Cir. 1998); *Tamez*, 118 F.3d at 1095 n. 5; *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir.), *cert. denied*, 519 U.S. 813, 117 S.Ct. 61, 136 L.Ed.2d 23 (1996). A defendant "is entitled to qualified immunity unless he violated a constitutional right that was clearly established at the time of his conduct." *Blackwell v. Barton*, 34 F.3d 298, 302–03 (5th Cir.1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)); *see Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994). In considering a claim of qualified immunity, the court must make a two-step inquiry:

> First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right. If the plaintiff fails this step, the defendant is entitled to qualified immunity. If she is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances.

*Baker*, 75 F.3d at 198 (citations and internal quotations omitted); *accord Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001); *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir.1998); *Colston*, 130 F.3d at 99; *Harper*, 21 F.3d at 600; *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir.1993). A legal right is clearly established if the con-

tours of the right are sufficiently clear that reasonable officials would understand that their conduct violates that right. *See Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *Johnston,* 14 F.3d at 1059; *Bennett v. City of Grand Prairie,* 883 F.2d 400, 408 (5th Cir.1989).

 " 'If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.' " *Blackwell,* 34 F.3d at 303 (quoting *Pfannstiel,* 918 F.2d at 1183); *accord Johnston,* 14 F.3d at 1059; *see Malley,* 475 U.S. at 341, 106 S.Ct. 1092; *Cantu v. Rocha,* 77 F.3d 795, 806 (5th Cir.1996). In other words, if Amstutz's conduct was objectively reasonable, he may invoke qualified immunity, even if the conduct infringed upon Bluitt's constitutional rights. *See Kipps,* 197 F.3d at 769; *Gutierrez v. City of San Antonio,* 139 F.3d 441, 445 (5th Cir.1998); *Pfannstiel,* 918 F.2d at 1183.

 Furthermore, it is well settled that the "defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "[B]ecause qualified immunity turns only upon the *objective* reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur County,* 245 F.3d 447, 457 (5th Cir.2001) (emphasis in original) (citing *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034; *Pierce v. Smith,* 117 F.3d 866, 871 n. 5 (5th Cir. 1997)). Therefore, any subjective, or even discriminatory, motive on Amstutz's part does not disqualify him from the invocation of qualified immunity. *See id.* "An official is eligible for qualified immunity even if the official violated another's constitutional rights." *Thompson,* 245 F.3d at 457 (citing *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir.2000); *Pierce,* 117 F.3d at 872).

 "A plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford,* 243 F.3d 185, 190 (5th Cir.), *cert. denied,* 534 U.S. 817, 122 S.Ct. 46, 151 L.Ed.2d 17 (2001). Once an official asserts his entitlement to qualified immunity in a properly supported motion for summary judgment, the plaintiff bears the burden of coming forward with sufficient evidence to sustain a determination that the official's actions violated clearly established federal law. *See Blackwell,* 34 F.3d at 301; *Salas v. Carpenter,* 980 F.2d 299, 304, 306 (5th Cir.1992); *Bennett,* 883 F.2d at 408; *United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1310 (5th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). Hence, to prevail, Bluitt must show that Amstutz knew or reasonably should have known that the action he was taking within his sphere of official responsibility would violate Bluitt's constitutional rights. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *Schultea,* 47 F.3d at 1431–32.

Here, the parties dispute whether Amstutz recommended Bluitt's termination on the basis of a legitimate, nondiscriminatory reason. The appropriate inquiry, however, is whether Amstutz violated a clearly established constitutional right and whether his conduct was objectively reasonable. As detailed below, Bluitt has adduced no evidence that Amstutz violated her constitutional rights. In fact, the record reflects that Amstutz did not discharge Bluitt but merely recommended her termination to the Board, which made the final decision.

As the Fifth Circuit explained in a similar factual scenario in *Beattie*, if Amstutz "did not cause the adverse employment action, [he] cannot be liable under § 1983, no matter how unconstitutional [his] motives." 254 F.3d at 605. "[E]ven if the board adopted [his] recommendation, that recommendation exhibited no unconstitutional motive on its face." *Id.*

Assuming, however, that Bluitt had made such a showing, Amstutz would still be entitled to qualified immunity if his conduct was objectively reasonable. Bluitt has not alleged that Amstutz knew he was violating her constitutional rights by recommending her termination. Moreover, Defendants cite a history of Bluitt's unprofessional behavior toward colleagues, students, and supervisors despite repeated warnings and reprimands prior to Amstutz's recommendation for her termination. Considering this reported pattern of misconduct, Amstutz's recommendation was objectively reasonable under the circumstances. Indeed, the independent examiner at Bluitt's due process hearing found that Amstutz's recommendation was based on legitimate, nondiscriminatory reasons, thus creating a presumption of reasonableness. *See Blackwell,* 34 F.3d at 303 (quoting *Pfannstiel,* 918 F.2d at 1183); *accord Johnston,* 14 F.3d at 1059; *see Malley,* 475 U.S. at 341, 106 S.Ct. 1092; *Cantu,* 77 F.3d at 806. Notably, although there is no evidence that Amstutz harbored a discriminatory animus, such evidence would not obviate the availability of qualified immunity. *See Thompson,* 245 F.3d at 457.

Therefore, in the absence of a showing that Amstutz violated Bluitt's constitutional rights and that his conduct was objectively unreasonable, Amstutz is entitled to qualified immunity. Accordingly, summary judgment is warranted on Bluitt's claims against Amstutz in his individual capacity under §§ 1981 and 1983.

### D. *Constitutional Claims*

Bluitt alleges that Defendants violated her constitutional rights under the Fourteenth Amendment through their actions and omissions. Specifically, she asserts that Defendants infringed on her substantive due process rights through the alleged deprivation of her liberty and property interests, violated her procedural due process rights by failing to follow the proper procedures in terminating her, and abridged her right to equal protection of the laws.

The federal Due Process Clause provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Federal law provides a monetary remedy for damages caused by procedural and substantive violations of the Due Process Clause. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Wheeler v. Mental Health & Mental Retardation Auth.,* 752 F.2d 1063, 1070 (5th Cir.), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985); *Russell v. Harrison,* 736 F.2d 283, 291–92 (1984); *Conley v. Board of Trustees of Grenada County Hosp.,* 707 F.2d 175, 182 (1983); *Wilson v. Taylor,* 658 F.2d 1021, 1032 (5th Cir.1981); *Rogan v. Lewis,* 975 F.Supp. 956, 966 (S.D.Tex.1997).

The United States Supreme Court has explained that " '[t]o determine whether due process requirements apply in the first place, we must look not to the "weight" but to the nature of the interest at stake.' " *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). To possess a protected right,

" 'a person clearly must have more than an abstract need or desire for it. [S]he must have more than a unilateral expectation of it. [S]he must, instead, have a legitimate claim of entitlement to it.' " *Id.* (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701).

### 1. *Substantive Due Process*

### a. *Property Interest*

 Generally, to establish a due process violation in the public employment context, the plaintiff must first show that she had a legally cognizable property interest in her continued employment. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Conner v. Lavaca Hosp. Dist.,* 267 F.3d 426, 429 (5th Cir.2001); *Lollar v. Baker,* 196 F.3d 603, 607 (5th Cir.1999) (citing *Texas v. Walker,* 142 F.3d 813, 818 (5th Cir.1998), *cert. denied,* 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999); *Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir. 1992)); *Brown v. Texas A & M Univ.,* 804 F.2d 327, 335 (5th Cir.1986); *accord Bryan v. City of Madison,* 213 F.3d 267, 275 (5th Cir.2000), *cert. denied,* 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001). "Public employees must demonstrate a property right founded on a 'legitimate claim of entitlement' based on 'mutually explicit understandings.' " *Spuler,* 958 F.2d at 106 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). Here, it is undisputed that Bluitt, who was employed under an HISD contract, had a property interest in her employment.

 In order to show that she was unconstitutionally deprived of her interest in her employment, Bluitt must show that HISD's termination of that interest was arbitrary or capricious. *See Walker,* 142 F.3d at 818 (citing *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.

1993)); *see also Harrington v. Harris,* 118 F.3d 359, 368 (5th Cir.), *cert. denied,* 522 U.S. 1016, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997); *Fowler v. Smith,* 68 F.3d 124, 128 (5th Cir.1995); *Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1081 (5th Cir.), *cert. denied,* 516 U.S. 995, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995); *Christian v. City of Dallas,* 64 F.Supp.2d 617, 625 (N.D.Tex. 1999). " 'If state action is so arbitrary and capricious as to be irrational, its infringement on a constitutionally protected interest may violate substantive due process rights.' " *Harrington,* 118 F.3d at 368 (quoting *Neuwirth v. Louisiana State Bd. of Dentistry,* 845 F.2d 553, 558 (5th Cir. 1988)). Substantive due process "requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Walker,* 142 F.3d at 819.

 "In reviewing academic decisions courts must determine whether the governmental action was 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.' " *Johnson v. Houston Indep. Sch. Dist.,* 930 F.Supp. 276, 287 (S.D.Tex.1996) (quoting *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)). To survive Defendants' motion for summary judgment on this issue, Bluitt must present evidence from which a reasonable jury could conclude that there was no rational academic basis for the decision to terminate her employment. *See Johnson,* 930 F.Supp. at 288.

Bluitt has not shown that HISD acted arbitrarily or capriciously in terminating her employment. The record reflects that she was discharged only after (1) a three-day hearing before a hearing examiner in which both parties were permitted

to introduce evidence and cross-examine witnesses, (2) the Board of Education reviewed the hearing examiner's recommendation, and (3) the Board allowed Bluitt another opportunity to make a statement. The record is replete with instances of Bluitt's unprofessional conduct beginning in the 1998 school year, and the hearing transcripts reflect that such evidence was considered, precluding a "rash decision" by the Board. Thus, there is no evidence that HISD officials acted in an arbitrary or capricious manner. To the contrary, it appears that the Board had a legitimate, nondiscriminatory basis for terminating Bluitt's employment—her repeated incidents of unprofessional conduct. Therefore, summary judgment is warranted on Bluitt's claim that she was deprived of a constitutionally protected property interest.

### b. *Liberty Interest*

▆▆▆▆ The Fifth Circuit has established the following test for determining whether a liberty interest exists:

> To establish a liberty interest, an employee must demonstrate that [her] governmental employer has brought false charges against [her] that "might seriously damage [her] standing and associations in [her] community," or that impose a "stigma or other disability" that forecloses "freedom to take advantage of other employment opportunities."

*Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir.1984), *cert. dism'd*, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985) (quoting *Roth*, 408 U.S. at 573, 92 S.Ct. 2701). In other words, "[a] public employee is deprived of a protected liberty interest either if terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to her standing or reputation in her community or if terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) she was denied other employment opportunities as

a result." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir.1997); *see Hill v. Texas Dep't of Crim. Justice*, No. Civ. A. 3:99CV215BF, 2000 WL 16436, at *4 (N.D.Tex. Jan.7, 2000). "However, violation of a liberty interest must involve a discharge and cannot be mere damage to one's reputation." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)); *see Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). "[T]he infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest." *Id.*

Bluitt has not sufficiently demonstrated all the elements necessary to establish the violation of a constitutionally cognizable liberty interest. She has not shown that the HISD Board made the charges against her public, and she conceded at deposition that she had no such evidence. *See Arrington v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir.1992); *Wells*, 736 F.2d at 256; *Johnson*, 930 F.Supp. at 286. Had she presented such evidence, Bluitt has failed to overcome the hurdle requiring that "[t]he public charges must be so stigmatizing that they create a 'badge of infamy' that destroys plaintiff['s] ability to obtain other employment." *Id.* (quoting *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir.1988)). At deposition, Bluitt testified that she was hired two months after her termination from HISD by the Community Education Partnership Schools, where she was responsible for training teachers, counseling students, and "keeping track" of 300 students. Although she was subsequently terminated from that position, Bluitt makes no showing that her termination resulted from any act or omission of HISD or Amstutz.

Furthermore, Bluitt's contention that she has been unable to obtain another teaching position since being dismissed by

the Community Education Partnership Schools is inadequate to support her claim, as her subsequent difficulties in securing employment are not attributable to HISD or Amstutz. Bluitt has presented no evidence establishing a causal link between her termination from HISD and her current employment problems. Thus, summary judgment is proper with respect to Bluitt's substantive due process claims under the Fourteenth Amendment.

### 2. Procedural Due Process

■ Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Roth*, 408 U.S. at 569–70, 92 S.Ct. 2701; *see also Findeisen v. North East Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir.1984) (in order to determine whether plaintiff has presented a procedural due process claim, the court must determine if the plaintiff was "deprived of a protected property interest and, if so, was the deprivation accomplished without adherence to due process minimums") (citing *Logan*, 455 U.S. at 428, 102 S.Ct. 1148); *Brown v. City of Galveston*, 870 F.Supp. 155, 158 (S.D.Tex.1994) (finding that "[i]n order to establish a claim of denial of procedural due process, a Plaintiff must prove that [she] had a constitutionally protected property or liberty interest that has been infringed by the Defendant").

■ "The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487; *see Helton v. Clements*, 832 F.2d 332, 337 (5th Cir.1987); *see also Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir.1993) ("before dismissing [a public] employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond") (citing *Helton*, 832 F.2d at 337); *Price v. Brittain*, 874 F.2d 252, 261 (5th Cir.1989) (same) (citing *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir.1980)). Thus, "an informal hearing which allows the employee to give her version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process." *Browning*, 990 F.2d at 844 (citing *Loudermill*, 470 U.S. at 546 n. 8, 105 S.Ct. 1487). Procedural due process does not require that plaintiffs be afforded all the procedural safeguards found in a "trial-type" hearing, and plaintiffs must allege specific insufficiencies in the process afforded them to prevail on a denial of due process claim. *See Robison v. Wichita Falls & North Tex. Cmty. Action Corp.*, 507 F.2d 245, 252 (5th Cir.1975).

■ In the present case, Bluitt has failed to show that she was denied the process due her under Texas law governing public school employment. The record reflects that on March 2, 2000, Amstutz met with Bluitt and informed her that he was going to recommend her termination based on her unprofessional behavior. Subsequently, on March 24, 2000, Superintendent Paige sent her a detailed notice of several allegations underlying the proposal before the Board for termination of her employment. Under §§ 21.158 and 21.256 of the Texas Education Code and § 544.000 of the HISD Board Policies, Bluitt requested a hearing before an independent hearing examiner. Two months later, commencing May 25, 2000, an independent hearing examiner conducted a three-day hearing at which Bluitt was rep-

resented by counsel, was allowed to introduce evidence, and was permitted to cross-examine witnesses. On August 30, 2000, the hearing examiner issued a fifteen-page Findings of Fact and Conclusions of Law, detailing her reasons for recommending Bluitt's termination. Subsequently, before the HISD Board made its final decision, Bluitt was allowed to make a statement to the entire Board urging it to reject the recommendation for her termination.

Bluitt also asserts that she was denied due process of law because she was not afforded the three-tiered Dispute Resolution Process provided under § 599.500 of the HISD Administrative Procedures for resolving grievances. The process, however, was inapplicable to Bluitt's situation, as Section 599.300 of the HISD Administrative Procedures provides, "An employee of the Houston Independent School District may not use the Dispute Resolution Process to contest a termination of employment."

Under Texas law, a teacher employed under a continuing contract is entitled to notice of a proposed termination, the grounds for such action, and, upon request, a hearing where the teacher has the right to: (1) be represented by counsel; (2) hear the evidence upon which the charges are based; (3) cross-examine each adverse witness; and (4) present evidence. *See* Tex. Educ. Code Ann. §§ 21.158, 21.256; HISD Board Policies § 544.000. At deposition, Bluitt admitted that she availed herself of all these rights. She argues, however, that she did not receive prior to the hearing copies of some of the documents that were in her file regarding her behavior and that she did not have the opportunity to cross-examine the authors of some documents. She specifically identifies "Ms. [Jacqueline] Colton and the unnamed teachers who complained about her teaching ... and [alleged] that her students were academically behind." The exhibit

index and witness list for the hearing reveal that Bluitt had the opportunity to examine the authors of all the exhibits except for one note written by Colton. Notably, the exhibit list indicates that Bluitt's handwritten response to that note was included in the evidence before the hearing examiner. Thus, Bluitt was afforded far more due process than the minimum requirement of an informal hearing in which an employee is allowed to present her version of the events at issue. *See Browning*, 990 F.2d at 844.

Finally, Bluitt offers no evidence in support of her allegations that the HISD Board did not sufficiently review the hearing report and transcript before making its decision to terminate her employment. To the contrary, the transcript of the Board's September 7, 2000, meeting contains several references to the transcript of the May 2000 hearing and to the hearing examiner's written findings. Therefore, because Bluitt was afforded all the process she was due, her procedural due process claim is without merit.

### 3. *Equal Protection*

▮ Bluitt asserts that Amstutz treated her differently than younger and non-African-American teachers, thereby denying her equal protection of the laws as guaranteed by the Fourteenth Amendment.

▮ The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir.1996) (emphasis in original) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *accord Plyler v. Doe*,

457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Bryan,* 213 F.3d at 276; *Mayabb v. Johnson,* 168 F.3d 863, 870 (5th Cir.), *cert. denied,* 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999); *Stefanoff v. Hays County,* 154 F.3d 523, 525–26 (5th Cir.1998); *Rolf v. City of San Antonio,* 77 F.3d 823, 828 (5th Cir.1996); *Vera v. Tue,* 73 F.3d 604, 609 (5th Cir. 1996). " 'A violation of the equal protection clause occurs only when, *inter alia,* the governmental action in question classifies between two or more relevant persons or groups.' " *Johnson v. Rodriguez,* 110 F.3d 299, 309 (5th Cir.), *cert. denied,* 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997) (quoting *Vera,* 73 F.3d at 609–10); *see Mayabb,* 168 F.3d at 870; *accord Rolf,* 77 F.3d at 828.

In the present case, Bluitt claims that the adverse disciplinary actions taken against her by Amstutz constituted treatment that differed from the actions taken against other similarly situated employees who were younger or not African American. As discussed above, Bluitt has made no showing that similarly situated employees outside her protected classes were treated more favorably than she. Amstutz has cited several reasons for his recommendation that Bluitt be terminated that distinguish Bluitt's behavior from that of other employees, including her reported outburst at the August 1999 Math Department meeting and her confrontations with other teachers, students, and Amstutz himself. In addition, Bluitt offers no evidence that other employees had a comparable history of misconduct, and she makes no showing that her record of unprofessional behavior, as related in various HISD memoranda, is incorrect. Moreover, Bluitt has failed to offer evidence of the manner in which she was "classified" on the basis of her age or race. Bluitt's only assertion in support of her equal protection claim is that she is of a race different from that of Amstutz.

Bluitt cites Fifth Circuit precedent that recognizes a presumption of discriminatory intent where a supervisor of one race treats similarly situated employees of another race differently than employees of his own race. *See Barnes v. Yellow Freight Systems.,* 778 F.2d 1096, 1101 (5th Cir.1985). This presumption, however, requires that the circumstances of the employees be "essentially identical." *Id.* The presumption is expressly limited to cases where "there is no apparently legitimate reason" for the disparate treatment in question. *Id.* Under these circumstances, Bluitt's unique history of improper conduct and unprofessional behavior constitutes a rational basis for the difference in treatment, irrespective of her race or age, defeating any presumption of discriminatory intent. Therefore, because Bluitt has failed to show that she was unfairly classified or treated differently than other similarly situated employees, her equal protection claim must be rejected.

### E. State Law Claim Under the Texas Civil Practice and Remedies Code

Finally, Bluitt brings a race discrimination claim under Section 106.001(a) of the Texas Civil Practice and Remedies Code, which states in pertinent part:

(a) An officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin: (1) refuse to issue to the person a license, permit, or certificate; (2) revoke or suspend the person's license, permit, or certificate; (3) refuse to permit the person to use facilities open to the public and owned, operated, or managed by or on behalf of the state or a political subdivision of the state; (4) refuse to permit the person to participate in a program owned, operated, or managed by or on behalf of the state or

a political subdivision of the state; refuse to grant a benefit to a person; (6) impose an unreasonable burden on the person; or (7) refuse to award a contract to a person.

Tex. Civ. Prac. & Rem. Code Ann. § 106.001(a). The court has supplemental jurisdiction over this state statutory claim pursuant to 28 U.S.C. § 1367(a).

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims " 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Supplemental jurisdiction over state law claims, however, is a " 'doctrine of discretion, not of plaintiff's right.' " *City of Chicago v. International Coll. of Surgeons,* 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130). A district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *accord Cabrol,* 106 F.3d at 110 (citing *Cinel v. Connick,* 15 F.3d 1338, 1344 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994) (citing *Gibbs,* 383 U.S. at 725, 86 S.Ct. 1130)). Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Cohill,* 484 U.S. at 350, 108 S.Ct. 614; *accord City of Chicago,* 522 U.S. at 173, 118 S.Ct. 523; *McClelland v. Gronwaldt,* 155 F.3d 507, 520 (5th Cir.1998); *Cabrol,* 106 F.3d at 110; *Cinel,* 15 F.3d at 1344.

When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims. *See* 28 U.S.C. § 1367(c)(3); *City of Chicago,* 522 U.S. at 173, 118 S.Ct. 523; *Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130; *Cohill,* 484 U.S. at 349, 108 S.Ct. 614; *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1254 (5th Cir.1990). "The *Gibbs* test is a flexible one, under which courts should conduct a fact-specific inquiry, considering the totality of circumstances of each case." *Guzzino v. Felterman,* 191 F.3d 588, 594–95 (5th Cir.1999). "[T]he Supreme Court has counseled that the dismissal of all federal claims weighs heavily in favor of declining jurisdiction." *McClelland,* 155 F.3d at 520; *see Robertson v. Neuromedical Ctr.,* 161 F.3d 292, 296 (5th Cir.1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999). Moreover, in the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989)); *see McClelland,* 155 F.3d at 519–20.

■ Here, Bluitt's federal claims against Defendants are subject to summary judgment, leaving only her Texas statutory claim pending against Defendants. In this situation, because the federal claims are being dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court should decline to exercise jurisdiction over the remaining state law claim. *See Cohill,* 484 U.S. at 350, 108 S.Ct. 614; *Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320, 328 (5th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999); *Bu-*

*chanon v. City of Lancaster,* No. Civ. A.
3:98–CV–0265–G, 2000 WL 123970, at *6
(N.D.Tex. Jan.31, 2000). In light of the
record, it is unclear how Bluitt can sub-
stantiate her claim that HISD or Amstutz
violated this statute. Nevertheless, in
view of the court's dismissal of Bluitt's
federal claims, the court declines to exer-
cise jurisdiction over Bluitt's state law
discrimination claim under § 106.001(a) of
the Texas Civil Practice and Remedies
Code. Hence, this claim is dismissed with-
out prejudice.

### III. *Conclusion*

Accordingly, Defendants' Motion for
Summary Judgment is GRANTED IN
PART. No genuine issues of material fact
exist with regard to any of Bluitt's claims
under federal law, mandating summary
judgment. Due to the dismissal of Bluitt's
federal claims, the court declines to exer-
cise jurisdiction over Bluitt's claim under
Texas state law. Accordingly, Bluitt's
claim under Texas Civil Practice and Rem-
edies Code § 106.001(a) is dismissed with-
out prejudice.